CHRISTIAN RAUSCH, Appellant, v. JACOB MICHEL.

Division One, December 21, 1905.

1. **FINDING OF FACTS: What is.** It is the conclusion drawn by the trial court from the evidence, and not the reason of the judge, which constitutes the finding of fact.

2. ———: ———: **What is Reviewable.** It is the finding of fact, and not the reasoning employed by the trial judge, that is reviewable on appeal.

3. ———: **When Reviewable.** Where only the finding of fact is brought to the appellate court, and no instructions were asked or given, and no error appears on the face of the record proper, there is nothing left, in a law case, for the appellate court to review.

4. **DEED: Delivery.** The grantor must part with dominion over a deed before it can be said to be delivered. Hence, where a mother executed a deed and handed it to her son and said, "Here is your deed; now, you can sell the land and leave me," and the son said, "If you think I am mean enough to do that,

you can take my deed to take care of so long as you live," and when the question of having it recorded was discussed, she said she did not wish it recorded, that something might arise which would make it necessary for her to withdraw the deed, and asked her son to give it to her, and he did so, and thereafter she kept it for two years and then destroyed it, and made a mortgage on the land to secure her debts, there was no delivery.

5. ———: ———: **Purchaser Without Notice.** Even if it be conceded that the mother delivered the deed to the son, yet as it was not recorded, and a subsequent mortgagee had no notice of its existence, the mortgage executed by the mother conveyed the paramount title, and at its foreclosure the purchaser without notice took the title.

Appeal from Gasconade Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*R. A. Brewer* and *John W. Booth* for appellant.

(1) A judgment or decree which recites the findings of fact upon which it is based must be such a judgment or decree as those facts justify. When on the trial of questions of fact by the court, in a case at law or in equity, a special finding of facts is requested, section 695 requires the court to state in writing its findings of fact separate from its conclusions of law, and the facts so found and stated must be such as on the pleadings justify the judgment or decree entered thereon. Loan & Trust Co. v. Browne, 157 Mo. 116. In the case at bar the court's findings of fact are under the pleadings insufficient to support its conclusions of law and final decree. (2) The relation of parent and child is a good consideration for a conveyance of land by the parent to the child. Chitty's Blackstone, book 2, side p. 297. (3) Though a deed recites a valuable consideration, it may be sustained by proof of a good consideration. Jackson v. Railroad, 54 Mo. App. 642. (4) If a deed expresses a consideration the grantor is estopped

to deny that the title passed. Bobb v. Bobb, 7 Mo. App. 501; Winningham v. Pennock, 36 Mo. App. 694. (5) "A valid deed, once delivered, has the effect of vesting the title in the grantee, and although it may be afterward destroyed or come into the possession of the grantor, it will not operate as a revestiture of the title." State ex rel. v. Dulle, 45 Mo. 268.

*J. C. Kiskaddon* and *August Meyer* for respondent.

(1) The judgment ought to be affirmed or the appeal dismissed, for the reason that appellant has failed to comply with the rules of the court in preparing his so-called abstract. He seems to especially criticise the finding of the court, but he fails to set forth the evidence so that this court may be advised whether the finding is warranted or not. (2) Declarations of parties, some of them made long prior to the execution of the deed, have little probative force. Such loose statements, if competent for any purpose, ought to be received with great caution. Cornet v. Bertelsman, 61 Mo. 127; Fanning v. Doan, 139 Mo. 411. (3) This action seems to have been treated in the court below as a suit in equity. If it is such it is one for the specific performance of a parol gift of land. While the petition alleges that plaintiff took possession in pursuance of such gift, yet it does not state facts sufficient to constitute a cause of action, for the reason that it fails to allege that in pursuance of said gift he made lasting and valuable improvements on the land, or that he undertook, did or performed any obligation in consequence of such gift. West v. Bundy, 78 Mo. 407; Anderson v. Scott, 94 Mo. 637. (4) But the evidence to establish a present parol gift must be of such a character as to leave no reasonable doubt that it was actually at the time made. Berry v. Hartzell, 91 Mo. 136; Railroad v. McCarty, 97 Mo. 222. (5) But is this suit a suit in equity for the specific performance of a parol gift? The petition alleges that the owner in fee of the land, Mrs.

Vetter, made and delivered to plaintiff a deed convey-
ing the land to him. If such be the fact, then he had
a complete remedy by action of ejectment. Proof of the
execution and delivery of the deed would be sufficient,
even if the deed were lost or destroyed. Ebersole v.
Rankin, 102 Mo. 503. (6) But after all, the real ques-
tion in this case is whether or not the deed of Mrs. Vet-
ter to plaintiff was delivered. If delivered it passed
the title; if not, it did not. Crowder v. Searcy, 103 Mo.
117; Hall v. Hall, 107 Mo. 107. (7) To constitute a
delivery the grantor must unreservedly part with all
dominion over the deed, and the grantee must unre-
servedly accept it. The intent to deliver and accept is
necessary and mutual. Cravens v. Rossiter, 116 Mo.
343; Standiford v. Standiford, 97 Mo. 238; Tyler v.
Hall, 106 Mo. 320; Powell v. Banks, 146 Mo. 632; Mudd
v. Dillon, 166 Mo. 110; McNear v. Williamson, 166 Mo.
358. (8) Whether this proceeding be treated as a suit
in equity or an action at law, the plaintiff having re-
quested the court to find the facts, cannot complain if
there is error in that request and the court's compli-
ance. It is plaintiff's own error committed at his solici-
tation. State v. Palmer, 161 Mo. 152; Sprague v. Sea,
152 Mo. 327; Harper v. Morse, 114 Mo. 317.

MARSHALL, J.—This is an action to recover the
southwest quarter of the northeast quarter of section
13, and the southeast quarter of the northwest quarter
of section 13, all in township 44, range 5 west, contain-
ing eighty acres, in Gasconade county, Missouri. The
plaintiff calls it an action under section 650, Revised
Statutes 1899, to determine the interests of the parties
therein. The defendant gives it no name. The court
treated it as an action under section 650, or as a bill of
equity, it does not clearly appear which. The trial
court entered a decree that the defendant stand seized
of the land and that the plaintiff take nothing by his
suit, and after proper steps the plaintiff appealed.

THE ISSUES.

The petition alleges that in 1881, Dorothea Vetter, the mother of the plaintiff, was the owner in fee simple, and in possession, of the premises; that she made a verbal gift thereof to the plaintiff and put him in possession thereof in 1881, and afterwards on the 30th of October, 1894, she executed and delivered to the plaintiff a quitclaim deed therefor; that from 1881 to 1901, the plaintiff was in the actual, open possession, relying on the gift, and in good faith claimed title to the property, and claimed to be the absolute owner thereof; "that by virtue of the premises aforesaid, plaintiff claims to be and is the owner of the absolute fee-simple title of, in and to said real estate;" that defendant is in possession of the premises and claims to be the owner in fee simple; that the defendant's claim of title is derived through a mortgage executed by Dorothea Vetter long after the fee-simple title had passed from Mrs. Vetter to the plaintiff.

The prayer of the petition is that the court adjudge the plaintiff to be the owner in fee simple and that the defendant hath no title, interest or estate in the land, and for costs—there is no prayer for possession.

The answer admits that Mrs. Vetter owned the land in 1881 but denies the alleged verbal gift to the plaintiff, or that Mrs. Vetter put the plaintiff in possession, or that she executed a quitclaim deed as alleged in the petition, and that plaintiff ever had possession of the real estate as alleged in the petition; and denies that the title ever passed from Mrs. Vetter to the plaintiff.

The answer then affirmatively pleads that on the 14th of October, 1881, Mrs. Vetter became seized of the premises and that she afterwards leased the same to the plaintiff at an annual rental of $36 a year, and that the plaintiff entered into the possession pursuant to the lease and continued to hold possession thereof, as in the

answer afterwards alleged, without notice to Mrs. Vetter that he claimed possession thereof adversely to her; that about the 30th of October, 1894, Mrs. Vetter executed a quitclaim deed purporting to convey the property to the plaintiff, "but it being represented to her that said deed was intended to operate as a last will and testament, she did not deliver said deed to the plaintiff, but herself retained possession thereof, and afterwards destroyed the same;" that plaintiff paid no consideration for the deed; that on the 30th of November, 1882, Mrs. Vetter executed her mortgage on the premises to secure a debt of $100 she then owed one Henry Nolte; that prior to the year 1896 plaintiff became indebted to one Simon Boeger, represented by a promissory note for $89.30, and also to H. F. Brinkmann, represented by a note of $60, on both of which notes Mrs. Vetter was the surety; that on the 20th of February, 1896, Boeger recovered a judgment against the plaintiff and Mrs. Vetter for $92.90, and that Nolte and Brinkmann were pressing Mrs. Vetter for the amounts due them; that thereupon Mrs. Vetter, with the knowledge and without the objection of the plaintiff, applied to the defendant for a loan of money sufficient to satisfy and pay off said claims and demands; that defendant was informed and believed that plaintiff had no title, claim or interest in the land except as tenant of Mrs. Vetter, and acting on such information, and so believing, without notice that the plaintiff claimed said real estate in fee, the defendant did, on the 28th of May, 1896, loan to Mrs. Vetter the sum of $300, and took her note therefor, payable one day after date, with five per cent interest thereon, and to secure the payment of such note Mrs. Vetter executed and delivered to the defendant her mortgage with power of sale, which was duly recorded, and that out of said loan Mrs. Vetter paid off said claims; that upon default being made in the payment of the note, the mortgagee foreclosed the mortgage, on the 21st of October, 1899, and one Edward

Michel became the purchaser, and the mortgagee exe-
cuted a conveyance to him, which was duly recorded,
and thereafter Edward Michel conveyed the same to
the defendant, and his deed was recorded; that within
a short time afterward the plaintiff voluntarily aban-
doned the possession of the premises and the defendant
entered upon the possession of the premises and now
holds the same.

The reply admits the defendant's claim of title,
but denies all other allegations of the answer, and then
affirmatively pleads that at the time of the execution
and delivery of the mortgage of Mrs. Vetter to the de-
fendant, the plaintiff was in the actual possession of the
real estate, and had been in such possession more than
ten consecutive years, claiming it adversely to all per-
sons, and that at the time the defendant made the loan
to Mrs. Vetter, he had actual notice that plaintiff was
in the actual possession of the land and of his title
thereto, and the conveyance from Mrs. Vetter to the
plaintiff.

The case was tried before the court without a jury,
and at the request of the plaintiff the court made a
special finding of facts, as follows:

"The court finds the facts in this case to be as fol-
lows: The plaintiff is the son of Dorothea Vetter.
Said Dorothea Vetter became owner in fee of the land
described in plaintiff's petition, October 17, 1881, by
deed conveying the same to her. In the same year, 1881,
shortly after she became the owner of said land, she
placed the plaintiff in possession of the same, and there-
after permitted him with her knowledge and consent to
occupy and use and possess the same, claiming the same
as his own against all persons other than the said Dor-
othea Vetter; that he so used and held possession of
said land and claimed the same from the year 1881 until
about the year 1899. That during all the time the land
was used and possessed by plaintiff he recognized that
the said Dorothea Vetter was the owner thereof and

did not at any time claim the same as against her. The said Dorothea Vetter, when she placed the plaintiff in possession of said land, did not make any absolute or unconditional gift of the same to him, but during all the time of his possession thereof, permitted him to hold, possess and use and improve the same with the expectation and understanding that he would at some time, either at or before her death, receive from her the title to the same, and that in the meantime she would hold the title thereto for her own protection, and to secure from him a part of her necessary support. That during the period of his possession of the same his possession thereof was not at any time hostile or adverse to said Dorothea Vetter. That on the 30th day of October, 1894, the said Dorothea Vetter, at the house occupied by plaintiff on said land, signed and duly acknowledged her quitclaim deed of conveyance of said land, purporting to be for a consideration of $100 therein expressed, to remise, release and forever quitclaim to plaintiff the land aforesaid, to have and to hold the same to plaintiff and his heirs and assigns forever. Upon so signing and acknowledging said quitclaim deed, said Dorothea Vetter handed the same to the plaintiff saying, "Here is the deed to your land. I hope you will do what you have promised," or words to that effect. Thereupon the plaintiff said, "All right," took the deed so handed to him, and handed the same to his wife to read it, for the reason that he could not read. Thereupon, and as a part of the same transaction, the question was asked whether the deed should be recorded. Said Dorothea Vetter answered, "It is best not yet, if something should happen and I could demand them back" (referring to the quitclaim deed and another similar deed for other property to her daughter signed and acknowledged at the same time). The justice of the peace who had written the deeds and taken the acknowledgments, suggested that she keep them as long as she lived. Mrs. Vetter then asked plaintiff

if he would give it back, and he replied, "Mother, you have already given it to me, but if you don't trust me I will give it back." He then returned the deed to her, and she stated that neither deed was to be delivered until after her death; that she would keep them in her possession. Plaintiff agreed to this. At plaintiff's request she promised that if she should give up either deed before her death she would give up the other at the same time; and then kept both deeds in her possession. That by said transaction said deed did not pass out of the custody or control of said Mrs. Vetter, or into the custody or control of the plaintiff, and there was no legal delivery of said deed, intended or consummated between her and the plaintiff.

"That by mortgage or deed from said Dorothea Vetter to Jacob Michel, dated May 26, 1896, and by mortgagee's deed from said Jacob Michel to Edward Michel and from him to the defendant, dated October 21, 1899 (all being deeds offered in evidence), the title of said Dorothea Vetter to said land was conveyed to the defendant. And that after such conveyance of said land to defendant the plaintiff in or about the year 1899 surrendered possession thereof to the defendant who has ever since held such possession."

And upon its said finding of facts the said court on said 18th day of April, 1902, rendered its final decree in the cause, that defendant "stand seized in fee of the southwest quarter of the northeast quarter of section 13, and the southeast quarter of the northwest quarter of section 13, of township 44, range 5 west, and that plaintiff take nothing by this his suit."

After proper steps the plaintiff appealed.

The plaintiff has filed no abstract of the record whatever. In what purports to be the abstract, only the pleadings, the findings of fact, the judgment, the filing of the bill of exceptions, a motion for new trial, which is not set out in full, but only the first, eighth, ninth, tenth and eleventh grounds therefor are stated,

the overruling of the motion for new trial, the time of filing a bill of exceptions, and the appeal to this court are set out. The plaintiff contends that this is sufficient for the purpose of raising the questions of law involved in the case, and that the findings of fact do not authorize the judgment rendered.

### I.

This is an action at law. No instructions were asked, given or refused. There is, therefore, no question open for review here except errors apparent on the face of the record proper, and the question whether, under the issues, the plaintiff made out a prima facie case. "The fact that, pursuant to section 2135, Revised Statutes 1889, section 695, Revised Statutes 1899, the court made a special finding of fact, does not change the long-established rule in this State that this court will not review the finding of the lower court on questions of fact, in actions at law. The special finding of fact, under our practice, serves only to accentuate the ruling of the court below on questions of law, pointing out more clearly the theory of law applied by that court to a given state of facts, but does not dispense with the necessity for asking declarations of law and taking the ruling of the court on them, nor does it open up a question of fact in this court. Our jurisdiction in such cases is appellate, and not original, under the Constitution, and it was not the purpose nor within the power of the Legislature to require this court to review questions of fact, in law cases, even where there was a special finding below." [Sutter v. Raeder, 149 Mo. l. c. 307.]

The trial court found that Mrs. Vetter did not make any absolute or unconditional gift of the land to the plaintiff; that his possession permitted him to hold, use and improve the land with the expectation and understanding that he would at some time, either at or before her death, receive from her the title to the same,

and that in the meantime she would hold the title thereto for her own protection, and to secure from him a part of her necessary support; that the plaintiff's possession was never at any time hostile to Mrs. Vetter; that the deed from Mrs. Vetter to the plaintiff of October 30, 1894, did not pass out of the custody or control of Mrs. Vetter, or into the custody or control of the plaintiff, and that there was no legal delivery of the deed intended or consummated between her and the plaintiff.

These were the essential facts found by the trial court with reference to the plaintiff's claim. All else in the finding of fact simply constitutes a statement of the evidence which the court deemed sufficient to warrant the conclusion of fact drawn, or the reasons which actuated the judge in reaching the conclusion.

It is the conclusion and not the reasons of the judge which constitute a finding of fact, and it is the finding of fact and not the process of reasoning employed by the trial court, with which this court has to do. The trial court having found the essential facts (and that finding being supported by substantial evidence) upon which the plaintiff's case was predicated, against him, and no instructions having been asked by the plaintiff or the defendant, or given by the court, and no error appearing on the face of the record proper, there is nothing left for this court to review.

## II.

The respondent, however, has not been content to permit this case to pass off on these considerations, and whilst insisting that the appellant has not complied with the rules, has still taken the precaution to set out in full all of the testimony contained in the full transcript of the record, bearing upon the questions of fact involved in this case, and by so doing has informed this court that the case made is this:

Mrs. Rausch became the owner of the property in 1881. She put the plaintiff in possession thereof and

permitted him to enjoy the same. She owned no other property except a tract of land adjoining the same. She had only one other child, a daughter. In 1882 she borrowed $100 from Nolte, and gave a mortgage on the property therefor. Afterwards the plaintiff became indebted to Boeger and Brinkmann, and Mrs. Vetter became surety on those notes. Boeger recovered judgment against the plaintiff and Mrs. Vetter, and Brinkmann and Nolte insisted upon the payment of the amounts due them. In order to raise money to pay said debts Mrs. Vetter, on the 28th of May, 1896, with the knowledge and consent of the plaintiff, borrowed $300 from the defendant and executed her note therefor, secured by a mortgage on the land, and out of the amount so loaned she paid off said claims, and gave to the plaintiff's wife the sum of fifteen or twenty dollars. In loose conversation, the plaintiff had stated to others that he owned the property, but when Mrs. Vetter applied to the defendant for the loan of the money, and before the loan was made or the mortgage executed, the defendant asked the plaintiff who owned the land and he said it was his mother's. The plaintiff denied having this conversation with the defendant. But it appears that in testifying in the case of Nolte against himself, before a justice of the peace, he said the land was his mother's, and he does not deny in this case that he so testified in the Nolte case. The circumstances attending the execution and delivery of the quitclaim deed from Mrs. Vetter to the plaintiff on October 30, 1894, are thus shown by the testimony of the various witnesses. Miss Christian Rausch, a daughter of the plaintiff, testified that one Henkler, a justice of the peace, came to their house, and told her father that he was going to get a deed, and when he asked "how," the justice answered, "Grandma came and said I should make a deed to it to-day." And that afterwards Mrs. Vetter came and Henkler made a deed to the premises in controversy to the plaintiff and another deed to the

other land to Mrs. Vetter's daughter, and that Mrs. Vetter handed the deed to the plaintiff for the premises in controversy and said, "Now I have given the land away and I am almost undressed. They can both sell the places and I won't have anything to eat." Thereupon the plaintiff said, "To let you see that I mean to do right I will let you keep the deeds so that you won't be afraid that I won't act fair." And thereupon he handed the deed back to Mrs. Vetter, and he never had possession of it thereafter.

She further testified that Mrs. Vetter promised the plaintiff that she would not deliver the deed to her daughter to the other property unless she also delivered the deed to him to this property.

Mrs. Mary Brinkman, a daughter of the plaintiff, testified that she had heard Mrs. Vetter say that the land belonged to the plaintiff before the deed was made; that when the deed was executed she handed the deed to the plaintiff to see whether it was right, saying, "That one belongs to you and this one to my daughter;" that the plaintiff could not read and gave the deed to his wife to read.

She further testified as follows:

"Q. What else did she say, if anything? A. She said nothing so far as I can remember, only that is your land, and he gave the deed back to her.

"Q. Now, how did it come that your father handed the deed back to her? A. I think she was afraid she would not have anything left to eat.

"Q. Did she say anything about that? A. She said as long as she lived they wanted to keep her, or should keep her. I want to keep it in my hands, and the children shall give me something to eat, but the deed shall remain as it is as long as she lived, and they have to pay for it, but she would save them herself as long as she lived.

"Q. Now, then, what I want to ask you next, when

your grandmother said that about wanting to keep the deeds as long as she lived in her hands, was that before she gave the deed to your father, and your mother read it? A. It was both before and after.

"Q. When was the first time she said it? A. Before they were written.

"Q. Was it before she came to the house that day or after she came to the house that day? A. Before.

"Q. Well, now while she was there at the house that day, when was the first time she said about wanting to keep the deeds? A. When they were written.

"Q. When they were written? A. Yes; the children had to pay; she said she wanted to keep them until she was dead, and then they should be the children's and they had to pay for them."

George Henkler, the justice, testified that one of the plaintiff's daughters came to his house and told him that Mrs. Vetter wanted to make a deed. He went to Mrs. Vetter's house, and she not having any ink or pen, he went to the plaintiff's house, and got a description of the land from the plaintiff and wrote two deeds; that Mrs. Vetter never gave him any directions; that afterwards Mrs. Vetter came to the house where her son was living and the deeds were then lying on the table. He further testified as follows:

"Q. Now, after they were signed and acknowledged, what did she do? A. Then we got to talking about the deeds. She said that Christ Rausch was to furnish her some wheat every year as long as she lived.

"Q. You seem to have a little tendency to mix things up and get confused. What was done after the deeds were acknowledged? A. Well, just at that time that is what we were talking about. They were lying right there when she said that, and finally she said, 'Which is Christ Rausch's deed?' and I handed it to her, and she handed it to him and said: 'Christ, here is your deed; but I want you to remember that you will keep that and

not break your word.' And I said, 'Here is the other deed'; and she took that herself.

"Q. Go on? A. Well, they were talking a while longer that way, and one of them asked me—I don't remember whether her or Christ—if they should have these deeds recorded, and I said, 'Of course; a deed on record is always the best,' and the old lady said she thought it was best not to have them recorded yet, and I said, 'That may be; I don't know what you allude to;' and she said, 'If something should happen I wanted to change my mind, then if they were not on record I want to take them back.' I told her that was a poor way to do—that I would rather keep them deeds as long as she lived, and give them back at the time of her death; and then she said: 'Will you give me that deed?' and Christ said, 'Yes, mother, you gave me the deed, but if you don't trust me I will give it back,' and he handed it to her for safe-keeping. Then she said neither one of the deeds, neither Nolte's nor Christ's, was to be delivered until after her death."

The witness further testified that "she said if one had the deed the other should have it, too, but neither one should have it."

The plaintiff testified that when the deed was executed his mother handed it to him, saying, "That is your deed now—the land is yours, you can sell it now and leave me." That he replied, "If you think I was that mean to do that, I will give you my deed to take care of so long as you live, and if you give out one deed you got to give out both," and that she promised she would do it.

Mrs. Vetter was old and feeble, and her deposition was taken and read upon the trial. It is short and to the point and is as follows:

"Q. What, if anything, do you know about making a deed to Christian Rausch? A. I made no deed; they induced me to make a deed in place of a will.

Rausch v. Michel.

"Q. How did it come about that that deed was made? A. Two deeds were made.

"Q. To whom were the deeds made? A. One to Christian Rausch, and one to my daughter, Dorothea Nolte.

"Q. Was the deed to Christian Rausch for the land in dispute? A. Yes.

"Q. Where were the deeds made and who wrote them? A. The deeds were made at Rausch's house by Henkler.

"Q. Who was present when the deeds were written? A. Rausch's wife, and some children and myself and Mr. Henkler.

"Q. Where was Christian Rausch at the time, if you know? A. I don't know; he was not there while I was there.

"Q. What did you do with the deeds after they were written? A. I picked them up and went home.

"Q. What did you do with the deeds? A. I took them home; afterwards I gave them to Louise Nolte to take care of them."

On cross-examination she testified as follows:

"Q. Who induced you to make the two deeds? A. Rausch and Henkler.

"Q. Did you go to Henkler and ask him to come and make the deeds? A. I did not.

"Q. How did you know he came down to make the deeds? A. One of Rausch's children, a girl, came and told me."

On re-direct-examination, she testified as follows:

"Q. What, if anything, did Henkler have to do with the deeds after they were made? A. Nothing; he gave them to me and I went home.

"Q. What, if anything, did Henkler say the deeds were for? A. He said the deeds were for a will or testament."

The testimony further shows that after Mrs. Vet-

ter made the mortgage to the defendant, she destroyed the deed which she had thus made to the. plaintiff.

Upon this showing it is apparent that, discarding the reasons and the parts of the evidence quoted by the trial judge in his finding of facts, the testimony which was adduced in the case, heard by the judge, and upon which he based his judgment, amply supported and justified the conclusions of law drawn by him. That there was no verbal gift of the land clearly appears and is not seriously insisted upon. That the plaintiff knew that Mrs. Vetter had executed a mortgage to Nolte is not controverted. That the plaintiff became indebted to Boeger and Brinkmann, and that Mrs. Vetter indorsed the notes, as surety, and that Boeger obtained a judgment on his note against the plaintiff and Mrs. Vetter, and that Nolte and Brinkmann were pressing for payment of their claims, and that in order to raise the money to pay the same Mrs. Vetter borrowed $300 from the defendant and executed her note, secured by a mortgage on the land, and that the plaintiff knew all of those facts, is not contradicted. The last-named mortgage was executed nearly two years after the alleged quitclaim deed was executed and claimed to have been legally delivered to the plaintiff.

It is also uncontradicted that after the mortgage to the defendant was foreclosed, the plaintiff voluntarily, or without process, left the possession of the premises and the defendant entered upon the same. The defendant testified that before he loaned the money and before Mrs. Vetter gave the mortgage to him, he asked the plaintiff who owned the land, and the plaintiff said his mother did. Plaintiff denies this. But it appears that in a suit of Nolte against plaintiff, the latter testified that the land belonged to his mother, and the plaintiff does not deny so doing. It is uncontradicted that the quitclaim deed was never recorded, and that after Mrs. Vetter executed the mortgage to the defendant, she destroyed that deed.

Upon this showing the plaintiff claims that there was a complete delivery of the deed from Mrs. Vetter to the plaintiff, which was sufficient in law to divest the title out of Mrs. Vetter and vest it in the plaintiff. The evidence does, not justify such a conclusion of law. In order to pass title there must be a delivery of the deed. [Rumsey v. Otis, 133 Mo. 1. c. 95; Powell v. Banks, 146 Mo. 1. c. 632; Kingman & Co. v. Buggy Co., 150 Mo. 1. c. 312; Shanklin v. McCracken, 151 Mo. 1. c. 595; McNear v. Williamson, 166 Mo. 1. c. 367; Peters v. Berkemeier, 184 Mo. 1. c. 402.]

In Powell v. Banks, supra, this court said: "At the outset it might be observed that delivery of the deed of trust relied on by plaintiffs is essential to their right of action. While this is true, no particular form or course is necessary to constitute a legal delivery. The authorities all agree that the delivery may be accomplished in various ways. While ordinarily to give legal effect to a delivery, especially as between parties, the deed must be complete in itself and ready for delivery, yet, after all, the question of delivery rests largely in the intention of the parties, and, generally speaking, whether or not an instrument has been delivered, is a mixed question of law and fact."

In Kingman & Co. v. Buggy Co., supra, it was said: "The rule in Missouri, therefore, is that where the grantor has relinquished dominion over a properly executed deed, the delivery is complete."

In Shanklin v. McCracken, supra, it was said: "A delivery of a deed is necessary to pass a title, just as delivery of seizin was necessary at common law (citing authorities). Under some circumstances a delivery of the deed may be good, although it remains in the custody of the grantor" (citing authorities).

In McNear v. Williamson, supra, it was said: "Delivery of a deed is the consummation of the act, the completion of the contract, and in order to its accomplishment there must be a meeting of the minds of the

parties on the purpose. 'In order to ascertain whether there has been a delivery of the deed or not, the intention of the parties in the entire transaction must be considered in connection with what they said and did.' [Miller v. Lullman, 81 Mo. l. c. 316.] The act must have been with the intent on the part of the grantor to divest himself of title, and it must have been accepted by the grantee with the intent to take the title as indicated in the deed. These two acts are essential to the complete delivery of the deed" (citing cases).

In Peters v. Berkemeier, supra, it was said: "To make a deed effectual it must be delivered to the grantee or to some person for him, so that it has passed out of the control of the grantor. Where a deed is beneficial to the grantee, and is placed upon record by the grantor or by some one at his direction, a delivery and acceptance might be presumed."

Measured by these standards, there was no delivery of the deed in this case. The whole transaction, whether judged by the testimony of the plaintiff and his witnesses, or by the testimony of Mrs. Vetter, clearly shows that there was no legal delivery. The conclusion reached by the trial judge was therefore right.

But there is another underlying infirmity in the plaintiff's case, which seems to have been entirely lost sight of by the counsel and the learned trial judge. This case was tried by the parties as if it was a controversy, direct, between Mrs. Vetter, the grantor, and the plaintiff, the grantee.

The rights of third persons (and the defendant is a third person to that matter) have not been taken into account at all. It is not pretended that he had any notice or knowledge whatever of the occurrence with reference to the execution, and the delivery or non-delivery of the deed. If it should be conceded that there was a delivery of the deed, it could have no effect whatever upon the defendant, for he had no actual knowledge of such delivery, and as the deed was never re-

corded, he was not affected with notice under section 924, Revised Statutes 1899. When Mrs. Vetter applied to the defendant for the loan of the money, and when he loaned her that amount and took the mortgage from her, the records disclosed the legal title to be in her, subject to the mortgage made by her to Nolte in 1882, and subject to the lien of the judgment of Boeger against the plaintiff and Mrs. Vetter if a transcript of that judgment had been filed in the circuit clerk's office, as to which there is no evidence.

The defendant, therefore, had the right, under the circumstances, to treat the property as the property of Mrs. Vetter, and a title obtained by a foreclosure of that mortgage conveyed a superior legal title to any title the plaintiff may have acquired by reason of the execution and the delivery, if a delivery be conceded, of the quitclaim deed from Mrs. Vetter to the plaintiff, which was not placed upon record, and of which neither the defendant, who loaned the money, nor the purchaser at the foreclosure sale under the mortgage to him, had any notice whatever.

For the foregoing reasons the judgment of the circiut court is right and it is affirmed.

All concur, except *Brace, P. J.*, absent.