LOCUST REALTY COMPANY, A CORPORATION, RESPONDENT, v. THE CITY OF KANSAS CITY, APPELLANT.—115 S. W. (2d) 205.

Kansas City Court of Appeals. March 7, 1938.

*Lancie L. Watts* for respondent.

*George Kingsley* and *Marcy K. Brown* for appellant.

CAMPBELL, C.—Plaintiff, in 1922, by assignment, acquired the right and interest of the lessee in a lease which demised land in Kansas City, Missouri, for a term of ninety-nine years, beginning in 1905.

The interest of the plaintiff in the land covered by the lease was conveyed to defendant by deed dated June 10, 1935. The deed contained words necessary to effect a conveyance of the interest of plaintiff in the land and recited it was subject to the following:

"General state and county and city taxes due in the year 1935 and all other taxes and assessments which are not now due or payable. Lease, of record, covering store room at 412 East 12th Street for term of three years beginning November 15th, 1934, made to Harry Winer and Charles B. Taylor and in which said Charles B. Taylor assigned his interest to said Harry Winer."

The deed was taken to and left with defendant's agent, Kansas City Title and Trust Company, on June 11, 1935, and filed for record by that company on July 1, 1935.

Following negotiations extending over a period of several weeks the defendant, acting through its manager, Judge McElroy, offered to pay $150,000 for the three interests in the land. The offer was made to George Arnold, secretary of plaintiff, on May 31, 1935. On the next day the defendant's manager sent a check in the amount of $150,000 to the Kansas City Title and Trust Company and in a letter directed that company to obtain "good title" to the land described in the ninety-nine year lease "free and clear of all encumbrances, claims and taxes, if any, with the exception of the City and State and County taxes due and payable in 1935," and that no part of the purchase money should be paid until all of the persons in interest had made conveyances conveying all interests "so there will be a good title conveyed to Kansas City," except as to the taxes above mentioned.

Although George Arnold received a copy of the letter to the Trust Company on or about June 3, 1935, he made no claim to the city manager prior to the making of the deed that the letter did not state correctly the terms of the oral agreement concerning the sale of the land. The Trust Company, in complying with the letter of June 1, acted through its president, Edward J. Eisenman. The latter examined the title of the land and wrote the conveyances which were to be executed to the city.

Eisenman, for the defendant, testified that prior to the writing of the deed from plaintiff to defendant, Arnold told him the conveyance was to be made subject to the Winer lease, a three-year lease covering a store room on the premises to be conveyed. Thereupon Eisenman called Judge McElroy and informed him that Arnold was claiming the conveyance by plaintiff was to be made subject to the Winer lease. In reply. Judge McElroy said, "That is all right;" that two days later Judge McElroy said to him, "I have learned that that Winer lease on that Locust property is a three-year lease. Don't close the deal until I tell you more about it." Shortly thereafter Judge McElroy said to Eisenman, "George (meaning George Arnold) is to leave about $1500 until he disposes of the Winer lease." The evidence for the defendant was to the effect that Arnold agreed that Eisenman could hold the $1500 of the purchase price until the Winer lease was surrendered. Arnold, on that subject, testified that he did not agree with Judge McElroy that the $1500 could be held pending settlement of the Winer lease; that the defendant agreed to buy the land subject to the Winer lease; that he told Eisenman that he could hold "the $1500 temporarily."

On July 5, 1935, the title company paid to plaintiff $10,000. Payment of the balance of the purchase price was delayed because of the Winer lease, and the delinquent city, state and county taxes in the amount of more than $10,000. The defendant abated the city taxes and thereupon paid plaintiff $4000 on the purchase price. When that payment was made the Trust Company had $8000 "to cover" the Winer lease and the state and county taxes.

Following the conversation between Eisenman and Arnold concerning withholding the $1500, the latter endeavored to induce Winer to surrender his lease without compensation, but was unable to accomplish the desired result. Finally, on September 3, 1935, Arnold, directed the Trust Company to pay Winer $1250 for the lease. The payment was made and the lease cancelled.

In December, 1935, the state and county taxes were abated in part and paid in part. Thereafter this suit was commenced to recover the sum of $1,250 upon the theory that plaintiff was induced through duress to assume the responsibility of obtaining a release of the Winer lease. The trial was to a jury. The judgment was for the plaintiff in the sum of $1250 and interest. The defendant has appealed.

The evidence shows that plaintiff was in "desperate financial condition" on May 31, had defaulted in payment of rent to its lessor in the sum of about $19,000; notice of forfeiture of the lease had been given; that plaintiff on May 6 filed its petition for reorganization under Section 77B of chapter 8 of the Bankruptcy Act, and that because of plaintiff's financial condition George Arnold was a "nervous wreck." The defendant was aware of plaintiff's financial difficulties.

The defendant insists its requested instruction in the nature of a demurrer to the evidence should have been given.

The agreement between plaintiff and defendant on May 31, was a verbal one, and neither party was bound thereby.

The letter of June 1 to the Trust Company stated the terms on which the defendant would purchase the land. The plaintiff had actual knowledge of the terms of that letter. One of the important and controlling provisions was that defendant would not purchase any interest unless it purchased all interests in the property. Therefore, the signing and acknowledging of the deed of June 11 and the placing of the deed with the Trust Company did not operate as a conveyance of plaintiff's interest in the land to the defendant. In other words, the deed did not vest any title in the defendant until it was accepted. The understanding was, and both parties acted on that understanding, that the deed, though delivered to the Trust Company, was not effective as a conveyance unless and until each of the other owners of an interest executed a conveyance. Rausch v. Michel, 91 S. W. 99, and cases cited therein. There is no evidence showing that defendant accepted any of the deeds until on July 1, when it filed the deeds for record. Prior to acceptance, neither party could have enforced the verbal understanding. Section 2967, Revised Statutes 1929. So, on this record, the demands which plaintiff relies upon as showing duress were made prior to the making of a contract which the plaintiff could have enforced against the defendant. The defendant had *legal* right at any time before the deeds were accepted to refuse to take plaintiff's deed subject to the Winer lease, although it agreed verbally to receive the conveyance subject to such lease for the reason it had not agreed in writing to purchase the land. [McHolland v. Treadway, 45 S. W. (2d) 903; Tapley v. Ogle, 162 Mo. 190, 62 S. W. 431; Dennis v. Woolsey et al., 272 S. W. 1014.]

In arriving at the conclusion just stated, we have considered the fact that there was no evidence showing that either of the owners of the other two interests was bound to make a conveyance prior to July 1. At the time the agreement was made concerning the $1500, there was in law no sale nor agreement to sell. Hence the defendant had lawful right to require plaintiff to assume responsibility for the Winer lease.

However, if duress existed, it existed on July 1. Thereafter plaintiff received $14,000. The taxes were abated or paid and the amount remaining unpaid and still involved was $1500. If that sum were due plaintiff, recovery thereof could have been had with no more trouble or expense than is required to prosecute the present action. When the settlement was made with Winer in September, 1935, there was no existing duress. Under such circumstances the payment to Winer was a voluntary one and the amount paid cannot be recovered. [Wood v. Kansas City Home Telephone Co., 223 Mo. 537, 123 S. W.

6; Morgan v. Joy, 121 Mo. 677, 26 S. W. 670; McCormick v. City of St. Louis, 166 Mo. 315, 65 S. W. 1038; Brown v. Worthington, 152 Mo. App. 351, 133 S. W. 93; 48 C. J. 753.]

Plaintiff relies on the cases of White v. McCoy Land Co., 229 Mo. App. 1019, 87 S. W. (2d) 672; and White v. Scarritt & Co., 111 S. W. (2d) 18. The defendants in those cases brought a suit known to them to be groundless, the effect of which was to prevent the sale of plaintiff's property to a third person. The suit purported to be in the interest of tax payers but was in fact a suit "directed solely against the property owners" Mrs. White was induced to pay 3½ per cent of the purchase price in order to obtain release from the oppressive suit, a suit to which she was not a party and over which she had no control.

Here there are no such facts. If it were true that defendant legally bound itself to purchase the property subject to the Winer lease and thereafter demanded that plaintiff secure surrender of the lease and threatened to withdraw from the transaction unless the plaintiff complied with the demand, a different question would be presented.

Concerning the question as to whether or not Arnold was coerced into agreeing that the $1500 could be held, he testified:

"Q. Mr. Arnold, you testified that you have had several talks by phone and by visits to Judge McElroy's office? A. Yes, sir.

"Q. There wasn't at any time in any of those conversations that he ever told you that unless you took care of this Winer lease that he would call the whole deal off, was there? A. No, sir.

"Q. There wasn't any time when he said that if you didn't take care of this thing you are not going to get any of your money if you don't? A. If I didn't take care of the matter I would lose my $1500.

"Q. The only thing that was involved was the $1500? A. That is right."

This is an action based on duress. Therefore, absent proof of duress recovery must be denied. Duress was not shown, and defendant's request for directed verdict should have been given.

The judgment is reversed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed. All concur.